**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Christine M. Arguello**

Civil Action No. 18-cv-03124-CMA-NRN

SWAN GLOBAL INVESTMENTS, LLC,

      Plaintiff,

v.

THOMAS RICHARD YOUNG,

      Defendant.

---

**ORDER AFFIRMING AUGUST 20, 2019 RECOMMENDATION OF
UNITED STATES MAGISTRATE JUDGE**

---

      This matter is before the Court on the Recommendation (Doc. # 81) of United States Magistrate Judge N. Reid Neureiter, wherein he recommends that this Court deny Defendant Thomas Young's Motion to Dismiss (Doc. # 57). Defendant filed an Objection (Doc. # 82) on September 3, 2019, and Plaintiff Swan Global Investments, LLC filed a Response (Doc. # 83) on September 17, 2019. For the following reasons, the Court affirms the Recommendation and denies Defendant's Motion.

## I.    <u>BACKGROUND</u>

      The Magistrate Judge's Recommendation provides a recitation of the factual and procedural background of this dispute and is incorporated herein by reference. *See* 28 U.S.C. § 636(b)(1)(B); Fed. R. Civ. P. 72(b). Accordingly, this Order will reiterate only what is necessary to address Defendant's objections.

This case involves a dispute that arose from the deterioration of the parties' business relationship. The following facts are taken from the operative complaint. (Doc. # 49.) Those facts are deemed true for purposes of the instant Order.

Plaintiff is an organization that provides investment management services and other financial services. In March 2013, the parties entered into a contract in which Defendant agreed to provide his services to "enhance the growth and goodwill" of Plaintiff's organization. (*Id*. at 3.) More specifically, Defendant's role was "to foster and enhance the goodwill of Plaintiff within the investment community and investment managers and advisors, and specifically to manage and enhance Plaintiff's relationships with investment advisors with whom [Defendant] had personal contacts or relationships." (*Id*.) As part of Defendant's employment, Plaintiff granted Defendant access to the details of Plaintiff's business methods. Some of those methods are not publicly known and provide Plaintiff with a competitive advantage in its industry.

On January 31, 2016, Plaintiff terminated Defendant's employment "after discovering that [Defendant] was not performing as agreed upon" in the parties' contract. (*Id*. at 5.) Plaintiff indicates that during the course of Defendant's employment, Defendant and Dean Zayed "planned and then launched a mutual fund company under the name 'Kaizen Advisory, LLC' in direct competition with [Plaintiff]." (*Id*.) Dean Zayed is also the president and owner of Brookstone Capital Management, LLC, which was one of Plaintiff's business partners.

Plaintiff alleges that Defendant secured Plaintiff's proprietary information about its business methods and disclosed that information to Mr. Zayed. Plaintiff further

alleges Defendant and Mr. Zayed improperly used Plaintiff's proprietary information to their advantage, and that Defendant induced Brookstone Capital Management to breach its contract with Plaintiff. At the same time, Defendant represented to Plaintiff that he was continuing to work in furtherance of Plaintiff's best interests, and he continued to accept payment for services that he was not actually performing.

Accordingly, Plaintiff initiated the instant case and asserts the following eight claims for relief:

- **Claim 1** – Breach of Contract;

- **Claim 2** – Unjust Enrichment;

- **Claim 3** – Misappropriation of Trade Secrets;

- **Claim 4** – Breach of Fiduciary Duty;

- **Claim 5** – Intentional Interference with Contractual Relations;

- **Claim 6** – Fraud;

- **Claim 7** – Interference with Business Relations; and

- **Claim 8** – Civil Conspiracy.

(*Id*. at 9–16.)

On June 14, 2019, Magistrate Judge Neureiter held a hearing on Defendant's Motion and accepted supplemental briefing with regard to the Motion. (Doc. ## 75, 76, 78.) After considering Defendant's affirmative defenses, and his arguments that each of the claims in the operative complaint fail to state a claim for relief for purposes of Rule 12(b)(6) of the Federal Rules of Civil Procedure, Magistrate Judge Neureiter concluded that Defendant's Motion should be denied. The instant Objection followed.

## II.    LEGAL STANDARDS

### A.    REVIEW OF A RECOMMENDATION

When a magistrate judge issues a recommendation on a dispositive matter, Federal Rule of Civil Procedure 72(b)(3) requires that the district judge "determine *de novo* any part of the magistrate judge's [recommended] disposition that has been properly objected to." An objection is properly made if it is both timely and specific. *United States v. One Parcel of Real Property Known As 2121 East 30th Street*, 73 F.3d 1057, 1059 (10th Cir. 1996). In conducting its review, "[t]he district judge may accept, reject, or modify the recommended disposition; receive further evidence; or return the matter to the magistrate judge with instructions." Fed. R. Civ. P. 72(b)(3).

In the absence of a timely objection, however, "the district court may review a magistrate [judge's] report under any standard it deems appropriate." *Summers v. Utah*, 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn*, 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.")).[1]

### B.    FEDERAL RULE OF CIVIL PROCEDURE 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) provides that a defendant may move to

---

[1] The Court notes that neither party objected to Magistrate Judge Neureiter's Recommendation to the extent that it concludes that the allegations in the operative complaint are sufficient to state a claim for unjust enrichment (Claim 2) and fraud (Claim 6). (Doc. # 81 at 20–22, 27–28.) After reviewing the Recommendation with respect to those findings, in addition to applicable portions of the record and relevant legal authority, the Court is satisfied that the Recommendation is sound and not clearly erroneous or contrary to law. *See* Fed. R. Civ. P. 72(a). Accordingly, the Court affirms and adopts the Recommendation's findings and conclusions regarding each of the relevant claims.

dismiss a claim for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (citations and quotation marks omitted).

"A court reviewing the sufficiency of a complaint presumes all of plaintiff's factual allegations are true and construes them in the light most favorable to the plaintiff." *Hall v. Bellmon*, 935 F.2d 1106, 1109 (10th Cir. 1991). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is **plausible** on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (emphasis added) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plausibility, in the context of a motion to dismiss, means that the plaintiff pleaded facts which allow "the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. The *Iqbal* evaluation requires two prongs of analysis. First, the court identifies "the allegations in the complaint that are not entitled to the assumption of truth," that is, those allegations which are legal conclusion, bare assertions, or merely conclusory. *Id*. at 679–81. Second, the Court considers the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id*. at 681. If the allegations state a plausible claim for relief, such claim survives the motion to dismiss. *Id*. at 679.

However, the court need not accept conclusory allegations without supporting factual averments. *Southern Disposal, Inc. v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678. "Nor does the complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Id.* (citation omitted). "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.* (citation omitted).

## III.  DISCUSSION

Defendant objects to the Recommendation's analysis of his affirmative defenses regarding the applicable statute of limitations, the economic loss rule, and collateral estoppel. Defendant also challenges some of Magistrate Judge Neureiter's findings regarding whether Plaintiff states a claim for relief pursuant to Rule 12(b)(6).[2] The Court will begin by analyzing Defendant's affirmative defenses before turning to the 12(b)(6) arguments.

## A.  DEFENDANT'S AFFIRMATIVE DEFENSES

### 1.  Statute of Limitations

Magistrate Judge Neureiter determined that "nothing about the [operative] Complaint indicates on its face that the right sued upon has been extinguished." (Doc. # 81.) Defendant objects to that determination, arguing that the previous complaints that

---

[2] *See supra* note 1 (discussing the parts of the Recommendation to which neither party objects).

Plaintiff has filed in this case establish the date on which Plaintiff's claims accrued. The Court agrees with the magistrate judge's conclusion that Plaintiff's claims should not be dismissed on statute of limitations grounds at the motion to dismiss stage.

   a.   *Applicable law*

With respect to inconsistent claims or defenses, Rule 8 of the Federal Rules of Civil Procedure provides that "[a] party may state as many separate claims or defenses as it has, regardless of consistency." Fed. R. Civ. P. 8(d)(3). Accordingly:

> In contrast to common law and code practice, the federal rules recognize that inconsistency in the pleadings does not necessarily mean dishonesty, and that frequently a party, after a reasonable inquiry and for proper purposes, must assert contradictory statements when he or she legitimately is in doubt about the factual background of the case or the legal bases that underlie affirmative recovery or defense.

5 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1006 (3d ed. Aug. 2019 Update). Due to the liberal pleading standard that Rule 8 establishes, courts generally do not "construe [a plaintiff's] first claim as an admission against another alternative or inconsistent claim." *Adler v. Pataki*, 185 F.3d 35, 41 (2d Cir. 1999) (quoting *Henry v. Daytop Village, Inc.*, 42 F.3d 89, 95 (2d Cir. 1994)). However, the general rule permitting inconsistent pleading is subject to a limitation.

Specifically, Rule 11 requires factual claims in a pleading to "have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery." Fed. R. Civ. P. 11(b)(3). Thus, courts have held that "Rule 8(d)(3)'s 'alternative pleadings rule' does not cover inconsistent assertions of fact when the pleader holds the knowledge of which of the inconsistent facts is the true one." *Mrla v. Fed. Nat'l Mortg. Ass'n*, No. 15-CV-13370,

2016 WL 3924112, at *4 (E.D. Mich. July 21, 2016) (citing *Am. Int'l Adjustment Co. v. Galvin*, 86 F.3d 1455, 1461 (7th Cir. 1996); *Great Lakes Higher Educ. Corp. v. Austin Bank of Chicago*, 837 F. Supp. 892, 894–95 (N.D. Ill. 1993) ("It is a violation of Rule 11 to withhold relevant factual evidence within the knowledge of the pleading party in order to gain the advantage of being able to plead more causes of action than are appropriate. This is also an inappropriate application of the alternative pleadings rule.")); *accord Total Coverage, Inc. v. Cendant Settlement Servs. Grp., Inc.*, 252 F. App'x 123, 126 (9th Cir. 2007) (citing *Galvin*, 86 F.3d at 1461). In other words, a plaintiff may not "set forth inconsistent, or alternative, or hypothetical statements in the pleadings **unless**, after a reasonable inquiry, the pleader legitimately is in doubt about the factual background or legal theories supporting the claims or defenses . . . ." Wright & Miller, *supra*, § 1285 (emphasis added) (footnote omitted).

    *b.*  *Analysis*

    In the instant case, Plaintiff's claims for breach of contract, unjust enrichment, fraud, breach of fiduciary duty, and misappropriation of trade secrets are subject to a three-year statute of limitations. Colo. Rev. Stat. §§ 13-80-101(1)(a), (1)(c), (1)(f); 7-74-107. Additionally, Plaintiff's claims for intentional interference with contract, intentional interference with prospective business relationships, and civil conspiracy are subject to a two-year statute of limitations. § 13-80-102(1)(a), (1)(i). The claims accrued on the date both the injury and cause were known or should have been known in the exercise of reasonable diligence. §§ 13-80-108, 7-74-107.

Based on Plaintiff's allegations in the complaints that it has filed in this case, the Court finds that Plaintiff's claims accrued at two different times. Plaintiff has indicated that it terminated Defendant's employment "due to breach of contract, fraud[,] and non-performance on **January 31, 2016**." *E.g.*, (Doc. # 4 at 2) (emphasis added).[3] In the Third Amended Complaint, Plaintiff asserted the following:

> SGI [Plaintiff] discovered in or about January 2016 through investigation by Swan that Mr. Young never performed his agreed upon contractual services as a Wholesaler of financial investment services that commenced in August 2014. The aforementioned investigation involved Swan inquiring from actual clients whereby it was revealed that such clients were ever [sic] serviced by Defendant Young. Consequently, upon discovering the aforementioned information SGI stopped paying Defendant Young and terminated Mr. Young's contract as of January 31, 2016.

(Doc. # 20 at 2.) However, Plaintiff also alleged that:

> In or about **July 2018** by way of discovery process of a related matter (i.e., Swan Global Investments, LLC v. Brookstone Capital Management, LLC) SGI acquired or learned of actual proof from evidence (i.e., reasonably should have learned and was actually informed) by way of the discovery process (i.e., Requests of Documents and/or by taking Depositions) of Defendant Young's co-conspiratorial fraudulent scheme that he planned with Dean Zayed to enter Swan's competitive financial space and utilized SGI's trade secrets so as to compete with Swan by launching Kaizen Advisory Funds against Swan's best interests . . . .

(*Id*. at 17–18) (emphasis added).

Considering the facts in the light most favorable to Plaintiff, it appears that its claims for breach of contract, unjust enrichment, and fraud are based on the investigation it conducted in 2016. *See generally* (*id*). Those claims focus on Defendant's alleged collection of payment without providing the corresponding services.

---

[3] The allegations in the operative complaint are inconsistent with Plaintiff's previous complaints because Plaintiff omitted any discussion of the 2016 investigation. *See* (Doc. # 49).

However, it seems that in 2018, Plaintiff discovered the facts that form the basis of its claims for trade secret misappropriation, intentional interference with contract and prospective business relationships, and civil conspiracy. (*Id*.) Those claims focus on Defendant's allegedly nefarious business relationships with third parties. Notably, the facts uncovered by Plaintiff's investigation of Defendant's failure to preform his duties would not necessarily provide notice that Defendant had unfairly competed with Plaintiff or that Defendant had misappropriated Plaintiff's trade secrets.

Plaintiff initiated the instant case on November 16, 2018. (Doc. # 1-1.) As a result, none of Plaintiff's claims violate the applicable statute of limitations based on the allegations in Plaintiff's various complaints. *See Jiying Wei v. Univ. of Wyo. Coll. of Health Sch. Pharm.*, 759 F. App'x 735, 740 (10th Cir. 2019) ("it is appropriate to resolve a statute of limitations defense on a Rule 12(b)(6) motion 'when the dates given in the complaint make clear that the right sued upon has been extinguished.'" (quoting *Sierra Club v. Okla. Gas & Elec. Co.*, 816 F.3d 666, 671 (10th Cir. 2016))). However, the discovery process may produce facts that warrant a different determination at the summary judgment stage of this case (e.g., Plaintiff may have had notice of Defendant's allegedly improper relationships with other businesses earlier than 2018). Accordingly, Defendant's Motion is denied without prejudice as to its statute of limitations arguments.

2.    Economic Loss Rule

Magistrate Judge Neureiter rejected Defendant's argument that some of Plaintiff's tort claims are barred by the economic loss rule. Specifically, the magistrate judge determined that "[t]he contract itself is so barren of any specifics that one cannot

say that the alleged breached duties arose under provisions of the contract, as opposed to . . . some independent duty of care under tort law." (Doc. # 81 at 16) (citing *Haynes Trane Serv. Agency, Inc. v. Am. Standard, Inc.*, 573 F.3d 947, 962–63 (10th Cir. 2009)). Defendant objects to that determination, arguing that because "[t]here are no allegations in the [operative] Complaint that identify the source of the parties' relationship anything other than the Young Consulting Agreement," that contract "is necessarily the source of any duties that may exist between the parties . . . ." (Doc. # 82 at 9.) The Court agrees with Magistrate Judge Neureiter.

Pursuant to the economic loss rule, "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Fid. Nat'l Title Ins. Co. v. Pitkin Cty. Title, Inc.*, 761 F. App'x 802, 806 (10th Cir. 2019) (quoting *A.C. Excavating v. Yacht Club II Homeowners Ass'n, Inc.*, 114 P.3d 862, 865 (Colo. 2005)). "To survive a motion to dismiss based on the economic loss rule, [a plaintiff] merely has to allege sufficient facts, taken in the light most favorable to him, that would amount to the violation of a tort duty that is independent of the contract." *Spring Creek Expl. & Prod. Co., LLC v. Hess Bakken Inv., II, LLC*, 887 F.3d 1003, 1020 (10th Cir. 2018) (quoting *Van Rees v. Unleaded Software, Inc.*, 2016 CO 51, ¶ 18).

In order for a "duty to be 'independent' of a contract, and thus actionable in tort notwithstanding the economic-loss rule," the duty must (1) "arise from a source other than the relevant contract," and (2) "the duty must not be a duty also imposed by the contract." *Haynes*, 573 F.3d at 962 (citing *Town of Alma v. AZCO Const., Inc.*, 10 P.3d

1256, 1263 (Colo. 2000); *BRW, Inc. v. Dufficy & Sons, Inc.*, 99 P.3d 66, 74 (Colo. 2004); *Grynberg v. Agri Tech, Inc.*, 10 P.3d 1267, 1270 (Colo. 2000)). Accordingly, "even if the duty would be imposed in the absence of a contract, it is not independent of a contract that 'memorialize[s]' it." *Id.* (quoting *BRW*, 99 P.3d at 74).

In the instant case, Plaintiff's tort claims are not barred by the economic loss rule. The relevant contract reads, in its entirety, as follows:

> Consulting Agreement: This Agreement between Tom Young ("Recipient") and Swan Wealth Advisors ("Swan") is for a DRS Consulting Agreement between the parties.

> This Agreement between Tom Young ("Recipient") and Swan Wealth Advisors ("Swan") is a consulting agreement for delivery of services to enhance the growth and goodwill of the Swan DRS and Swan Wealth Advisors and not an agreement of securities solicitation services.

> The amount of the monthly consulting fee will be $4000 which will be billed by Tom Young at the beginning of each month. Swan agrees to pay within 10 days of receipt of consulting bill.

> Term of agreement:

> The consulting agreement will be a month by month basis and will be subject to cancellation by Swan at any time. Swan will have the right to cancel the contract by giving a 30 day notice.

(Doc. # 57-1.) As Magistrate Judge Neureiter correctly observed, the contract is "extremely vague and unspecific." (Doc. # 81 at 4.) In fact, the only affirmative duty it imposes on Defendant is "to enhance the growth and goodwill of the Swan DRS and Swan Wealth Advisors . . . ." (Doc. # 57-1.)

Notably, the contract is silent with respect to all of Plaintiff's tort claims, i.e., misappropriation of trade secrets, breach of fiduciary duty, intentional interference with contractual relations, fraud, intentional interference with business relations, and civil

conspiracy. *See generally* (Doc. # 49). Faced with such a dearth of specificity, the Court declines to adopt an interpretation of Defendant's agreement to "enhance the growth and goodwill" of Plaintiff's organization that is so broad that it memorializes a contractual duty to avoid all the tortious acts referenced in the operative complaint. *See Van Rees*, ¶ 19 ("we also must be cautious of the . . . potential for contract law to swallow tort law."); *Haynes*, 573 F.3d at 962–63 (economic loss rule did not bar tort claim for fraud because that duty was not duplicated in the parties' contract). As a consequence, the legal duties underlying Plaintiff's tort claims arise from a source other than the relevant contract and those duties are not duplicated by the contract. Therefore, Plaintiff's tort claims are not precluded by the economic loss rule.

      3.    <u>Collateral Estoppel</u>

Defendant argues that Plaintiff's claims for intentional interference with contract, intentional interference with prospective business advantage, and civil conspiracy are barred on the basis of collateral estoppel. Specifically, Defendant asserts that a prior arbitration proceeding involving Plaintiff resolved a breach of contract issue that is relevant in this case. Magistrate Judge Neureiter rejected Defendant's argument, concluding that "[t]he scope of what was actually decided in the arbitration and how it relates to [the instant case] is not clear from reviewing only the Complaint and the few arbitration-related documents that have been provided." (Doc. # 81 at 33.) Again, the Court agrees with Magistrate Judge Neureiter.

"Collateral estoppel bars the successive litigation of any issue of law or fact 'once [it has] been determined by a valid and final judgment.'" *Stan Lee Media, Inc. v. Walt*

*Disney Co.*, 774 F.3d 1292, 1297 (10th Cir. 2014) (quoting *Ashe v. Swenson*, 397 U.S. 436, 443 (1970)). Accordingly, "the doctrine 'prevents a party that has lost the battle over an issue in one lawsuit from relitigating the same issue in another lawsuit.'" *Id.* (quoting *Melnor, Inc. v. Corey*, 583 F.3d 1249, 1251 (10th Cir. 2009)). As a result, "collateral estoppel, frequently referred to as 'issue preclusion,' aims to promote judicial efficiency, encourage reliance on previously adjudicated matters, and avoid inconsistent rules of decision." *Id.* (citation omitted).

The party asserting that an issue is collaterally estopped has the burden to prove the following:

(1) the issue previously decided is *identical* with the one presented in the action in question,

(2) the prior action has been *finally adjudicated on the merits*,

(3) the party against whom the doctrine is invoked was a *party or in privity with a party* to the prior adjudication, and

(4) the party against whom the doctrine is raised had a *full and fair opportunity to litigate* the issue in the prior action.

*Id.* (quoting *Murdock v. Ute Indian Tribe of Uintah & Ouray Reservation*, 975 F.2d 683, 687 (10th Cir. 1992)) (citing *Moss v. Kopp*, 559 F.3d 1155, 1161 (10th Cir. 2009)). "As long as the issues are identical, 'issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, *even if the issue arises when the party is pursuing or defending against a different claim*.'" *Id.* (quoting *Park Lake Res. LLC v. U.S. Dep't of Agr.*, 378 F.3d 1132, 1136 (10th Cir. 2004)).

Prior to initiating the instant case, Plaintiff engaged in arbitration proceedings with Brookstone Capital Management, LLC, and Dean Zayed ("the respondents").

There, Plaintiff alleged that the respondents violated a "Confidentiality/Non-Compete" provision of the parties' contract. (Doc. # 57-3 at 4.) In February 2019, the arbitration panel found that Plaintiff failed to show that the respondents violated the confidentiality provisions of the agreement. (*Id*. at 6.) However, the panel also found that the respondents did breach the non-competition provision of the agreement. (*Id*. at 12–13.)

In the operative complaint, some of Plaintiff's claims relate to the agreement that was at issue in the above-referenced arbitration proceeding ("the Brookstone Advisor-Manager Agreement"). For instance, Plaintiff alleges that Defendant "induced [the respondents] to breach their contractual duties to Plaintiff under the Brookstone Advisor-Manager Agreement." (Doc. # 49 at 14.) Similarly, Plaintiff alleges that "[Defendant's] actions induced [the respondents] . . . to compete with Plaintiff in violation of [the] agreement, and to appropriate the trade secrets and other proprietary information of Plaintiff." (*Id*. at 12.) Finally, Plaintiff alleges that Defendant and the respondents "came to a meeting of the minds to create and market products and services competitive with Plaintiff and did so by unlawfully appropriating the trade secrets and proprietary information owned by Plaintiff, and by unlawfully interfering with Plaintiff's ongoing contractual relations and potential economic relations." (*Id*. at 15–16.)

As a preliminary matter, it is not evident that the allegations Plaintiff raises in the operative complaint are identical to the ones decided by the arbitration panel. For example, the arbitration panel considered whether the respondents breached their confidentiality duties by disclosing information to third parties. In the instant case, by contrast, Plaintiff's theory appears to be that Defendant—and the respondents—

misappropriated Plaintiff's trade secrets by using that information to unfairly compete with Plaintiff. If the respondents used the relevant information to their advantage without disclosing it to others, then it is plausible that they misappropriated Plaintiff's trade secrets without violating their confidentiality duties. In that case, the arbitration panel's decision that the respondents did not violate the confidentiality clause of the parties' contract would have little probative value.

Moreover, Magistrate Judge Neureiter correctly observed that "the arbitration panel <u>did find</u> that Brookstone had breached the non-compete provisions of the Brookstone Advisor-Management Agreement. So, to the extent that [Plaintiff's] claim of interference with contract is based on [Defendant] having encouraged Brookstone to breach its agreement with [Plaintiff], there may be a claim." (Doc. # 81 at 33.) Therefore, the Court denies Defendant's Motion with respect to its collateral estoppel arguments.

## B. FAILURE TO STATE A CLAIM

In his Objection, Defendant argues that the operative complaint fails to state a claim for: breach of contract (Claim 1); breach of fiduciary duty (Claim 4); interference with contract and prospective business advantage (Claims 5 & 7); misappropriation of trade secrets (Claim 3); and civil conspiracy (Claim 8). The Court will address each claim in turn.

### 1. Breach of Contract (Cl. 1)

Magistrate Judge Neureiter determined that "it is plausible that [Plaintiff's] reasonable expectations under the [parties' contract] would be that [Defendant] would endeavor to 'manage and enhance' [Plaintiff's] business relationships and not compete

with [Plaintiff], not to share its business secrets . . ., and not appropriate its intellectual property." (Doc. # 81 at 20.) In his Objection, Defendant argues that the magistrate judge's "imposition of language and duties which are not evidenced by the face of the contract was in error and [Plaintiff's] claim for breach of contract should be dismissed." (Doc. # 82 at 10.) The Court agrees with Magistrate Judge Neureiter's conclusion that Defendant's Motion should be denied with respect to Plaintiff's breach of contract claim.

The parties' contract imposed a duty to "enhance the growth and goodwill of the Swan DRS and Swan Wealth Advisers . . . ." (Doc. # 57-1.) Additionally, pursuant to Colorado law, "[a] duty of good faith and fair dealing is implied in every contract." *Miller v. Bank of New York Mellon*, 2016 COA 95, ¶ 38 (citing *New Design Constr., Inc. v. Hamon Contractors, Inc.*, 215 P.3d 1172, 1181 (Colo. App. 2008)). "A plaintiff may rely on the duty of good faith and fair dealing 'when the manner of performance under a specific contract term allows for discretion on the part of either party.'" *Id*.

Courts have held that "[d]iscretion in performance occurs 'when the parties, at formation [of the contract], defer a decision regarding performance terms of the contract' leaving one party with the power to set or control the terms of performance after formation." *Id*. (quoting *McDonald v. Zions First Nat'l Bank, N.A.*, 2015 COA 29, ¶ 67). Accordingly, a party breaches a contract "[w]hen **one party uses discretion conferred by the contract to act dishonestly or to act outside of accepted commercial practices to deprive the other party of the benefit of the contract** . . . ." *Id*. (emphasis added) (quoting *Wells Fargo Realty Advisors Funding, Inc. v. Uioli, Inc.*, 872 P.2d 1359, 1363 (Colo. App. 1994)). However, the implied duty of good faith and fair

dealing "cannot contradict terms or conditions for which a party has bargained, nor can it inject substantive terms into the parties' contract." *Id*. (citing *ADT Security Servs., Inc. v. Premier Home Protection, Inc.*, 181 P.3d 288, 293 (Colo. App. 2007)).

In the instant case, the parties' contract conferred discretion to Defendant with respect to the manner in which he executed his obligation to "enhance the growth and goodwill" of Plaintiff's organization. The extent of that discretion is evidenced by the fact that the contract did not explicitly describe how Defendant would fulfil his duties, which allowed Defendant to utilize his expertise to guide his decision making. However, the operative complaint indicates that Defendant engaged in a surreptitious course of conduct to undermine and compete with Plaintiff's organization. *See, e.g.*, (Doc. # 49 at 5–6) (alleging Defendant accessed Plaintiff's proprietary information then formed a competing business entity that used Plaintiff's information to its advantage). Thus, the allegations in the complaint not only describe conduct that ostensibly violates Defendant's duty to enhance Plaintiff's growth and goodwill, but the allegations also illustrate the kind of abuse of discretion and dishonesty that form the basis of a plausible breach of the implied duty of good faith. Therefore, Plaintiff has stated a claim for breach of contract.

2.      Breach of Fiduciary Duty (Cl. 4)

Defendant argues that he "did not owe [Plaintiff] any fiduciary duties, as he was an independent contractor consulting for [Plaintiff] on a month-to-month contract."

(Doc. # 82 at 11.) In effect, Defendant argues that independent contractors cannot be subject to fiduciary duties as a matter of law. That is incorrect.

A fiduciary relationship "exists between two persons when one of them has undertaken a duty to act for or to give advice for the benefit of another on matters within the relationship's scope." *Mintz v. Accident & Injury Med. Specialists, PC*, 284 P.3d 62, 68 (Colo. App. 2010). Although some fiduciary relationships arise as a matter of law, others "may exist due to the superiority and influence that accompanies a repose of trust, confidence, and reliance." *Id*. (citing *Brodeur v. Am. Home Assur. Co.*, 169 P.3d 139, 151 (Colo. 2007)) (further citation omitted). "In order to be liable, the superior party must assume a duty to act in the dependent party's best interest." *Brodeur*, 169 P.3d at 151. Accordingly, the Colorado Supreme Court has noted that:

> Although a professional relationship can be used as evidence that one party has both the position and opportunity to influence the other party, a professional relationship is not a prerequisite to finding a fiduciary relationship. **A fiduciary relationship can arise out of a relationship of blood, business, friendship, or association**.

*Moses v. Diocese of Colorado*, 863 P.2d 310, 321–22 (Colo. 1993) (emphasis added).

In the instant case, Plaintiff engaged Defendant's services to "enhance the growth and goodwill of the Swan DRS and Swan Wealth Advisers . . . ." (Doc. # 57-1.) Plaintiff explains that during the parties' business relationship, Defendant's "role was to foster and enhance the goodwill of Plaintiff within the investment community and investment managers and advisors, and specifically to manage and enhance Plaintiff's relationships with investment advisors with whom [Defendant] had personal contacts or relationships." (Doc. # 49 at 3.) Thus, Plaintiff trusted Defendant with the task of

managing and promoting its reputation, which necessarily required Defendant to act in

Plaintiff's best interests. Given the importance and value of a business's reputation,

Defendant was in a position to exert significant influence over Plaintiff, which is a fact

that is not diminished by Defendant's title as an "independent contractor." As a

consequence, the allegations in the operative complaint are sufficient to establish a

fiduciary relationship.

    3.    <u>Interference with Contract & Prospective Business Advantage (Cl. 5 & 7)</u>

Intentional interference with contractual relations and intentional interference with

prospective economic advantage are "separate but similar tort claims . . . ." *Tara Woods*

*Ltd. P'ship v. Fannie Mae*, 731 F. Supp. 2d 1103, 1119 (D. Colo. 2010), *aff'd*, 566 F.

App'x 681 (10th Cir. 2014).

> Except in one respect, the elements of the claims are the same; the Plaintiff
> must allege: (i) it had either a valid existing contract with a third party **or** that
> it expected to enter into a contract with a third party; (ii) the Defendants
> induced or otherwise caused the third party to breach the contract or not
> enter into the contractual relation; and (iii) the Defendants did so
> intentionally and via improper means.

*Id*. (emphasis added) (citing *Harris Group, Inc. v. Robinson*, 209 P.3d 1188, 1195–96

(Colo. App. 2009)).

Plaintiff's claims adequately allege each element. Specifically, Plaintiff asserts

that Defendant "induced Brookstone and Dean Zayed to breach the Brookstone

Advisor-Manager Agreement, to compete with Plaintiff in violation of that agreement,

and to appropriate [Plaintiff's] trade secrets . . . ." (Doc. # 49 at 12.) Additionally, Plaintiff

alleges that Defendant—through an organization Defendant formed with Dean Zayed—

has "solicited and continue[s] to solicit potential clients of Plaintiff . . . ." (*Id*. at 5–6.)

Finally, Plaintiff asserts that Defendant's actions were intentional and wrongful because they were facilitated by Defendant's misappropriation of Plaintiff's proprietary information. *See* (*id*. at 6, 12). Thus, Plaintiff has stated a claim for both intentional interference with contractual relations and intentional interference with prospective economic advantage.

4. Misappropriation of Trade Secrets (Cl. 3)

Magistrate Judge Neureiter determined that the claims in the operative complaint are "sufficient to state a claim that the DRS system is a trade secret and that [Defendant] misappropriated the trade secret." (Doc. # 81 at 26.) However, Defendant argues that Plaintiff "failed to specifically detail the trade secrets allegedly misappropriated, the protections it takes to protects [sic] such secrets, or that [Defendant's] acquisition of these alleged 'trade secrets' was improper." (Doc. # 82 at 14.) The Court finds that Plaintiff has stated a claim for misappropriation of trade secrets.

Plaintiff brings its claim for misappropriation of trade secrets pursuant to the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. §§ 7-74-101–110. (Doc. # 49 at 10–11.) Under the Act, "to prove misappropriation of a trade secret, a plaintiff must show: (i) that he or she possessed a valid trade secret; (ii) that the trade secret was disclosed or used without consent, and (iii) that the defendant knew, or should have known that the trade secret was acquired by improper means." *Gates Rubber Co. v. Bando Chem. Indus.*, 9 F.3d 823, 847 (10th Cir. 1993). The Act defines a trade secret as:

scientific or technical information, design, process, procedure, formula, improvement . . . or other information relating to any business or profession which is secret and of value. To be a 'trade secret' the owner thereof must have taken measures to prevent the secret from becoming available to persons other than those selected by the owner to have access thereto for limited purposes.

*Innovatier, Inc. v. CardXX, Inc.*, No. 08-cv-00273-PAB-KLM, 2011 WL 3293789, *2 (D.

Colo. Aug. 1, 2011) (quoting Colo. Rev. Stat. § 7-74-102(4)). In order to determine

whether a trade secret exists, courts consider:

(1) the extent to which the information is known outside the business; (2) the extent to which it is known to those inside the business, i.e., by the employees; (3) the precautions taken by the holder of the trade secret to guard the secrecy of the information; (4) the savings effected and the value to the holder in having the information as against competitors; (5) the amount of effort or money expended in obtaining and developing the information; and (6) the amount of time and expense it would take for others to acquire and duplicate the information.

*Harvey Barnett, Inc. v. Shidler*, 338 F.3d 1125, 1129 (10th Cir. 2003) (quoting *Colo.*

*Supply Co. v. Stewart*, 797 P.2d 1303, 1306 (Colo. App. 1990)). "Improper means"

includes "theft, bribery, misrepresentation, breach or inducement of a breach of a duty

to maintain secrecy, or espionage through electronic or other means." Colo. Rev. Stat.

§ 7-74-102(1).

In the instant case, Plaintiff alleges that it "utilizes proprietary investment

methods such as the Defined Risk Strategy ('DRS'), which involves combining portfolio

management strategies with hedging devices, to protect its consumers from portfolio

risks and to mitigate the costs of its portfolio strategies by offsetting income generators."

(Doc. # 49 at 2.) Plaintiff further alleges that: it has invested considerable time and

resources in developing its investment methods; the methods are valuable in part

because they are not generally known; and Plaintiff actively takes steps to protect the confidentiality of its methods. *See* (*id*). Additionally, Plaintiff asserts that Defendant disclosed Plaintiff's proprietary information without its consent, and the nature of Defendant's employment indicates that he knew or should have should have known that the information ought to have been kept secret. (*Id*. at 10–11.)

The Court finds that the foregoing factual allegations are sufficient to state a claim for misappropriation of trade secrets. *See SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2012 WL 628619, at *10 (D. Colo. Feb. 27, 2012) (explaining that there is no heightened pleading standard for trade secret claims).

     5.    <u>Civil Conspiracy (Cl. 8)</u>

Defendant's Objection to the Recommendation's analysis of Plaintiff's civil conspiracy claim is insufficiently specific to trigger a *de novo* review. Defendant merely asserts that "[a]s set forth in [Defendant's] Motion, [Plaintiff's] Eighth Cause of Action should be dismissed." (Doc. # 82 at 16) (internal citations omitted). However, it is well established that a "generalized objection . . . is insufficient." *Schupper v. Cafasso*, 708 F. App'x 943, 946 (10th Cir. 2017) (citing *United States v. 2121 E. 30th St.*, 73 F.3d 1057, 1060 (10th Cir. 1996) (litigant's two-sentence, generalized objection, asking only that the district court "reconsider" the recommendation, was insufficient)); *see also Spaulding v. Astrue*, 379 F. App'x 776, 778 (10th Cir. 2010) (concluding that a "blanket statement that [a litigant] 'reassert[ed] all the arguments made [in his opening brief] and incorporat[ed] said brief by reference,'" was insufficient to preserve *de novo* review).

Federal Rule of Civil Procedure 72(a) provides:

"In the absence of timely objection, the district court may review a magistrate. . . [judge's] report under any standard it deems appropriate." *Summers v. Utah,* 927 F.2d 1165, 1167 (10th Cir. 1991) (citing *Thomas v. Arn,* 474 U.S. 140, 150 (1985) (stating that "[i]t does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings").

Applying this standard, the Court is satisfied that the Recommendation of Magistrate Judge Neureiter is sound and that there is no clear error on the face of the record.

## IV.    CONCLUSION

Based on the foregoing, the Court ORDERS that Magistrate Judge Neureiter's Recommendation (Doc. # 81) is AFFIRMED AND ADOPTED as an order of this Court. It is

FURTHER ORDERED that Defendant's Motion to Dismiss (Doc. # 57) is DENIED.

DATED: February 25, 2020

BY THE COURT:

CHRISTINE M. ARGUELLO
United States District Judge